IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| DENNIS QUARLES and<br>LUANN QUARLES<br><br>　　　　Plaintiffs<br><br>VS.<br><br>NATIONWIDE PROPERTY &<br>CASUALTY INSURANCE COMPANY;<br>FRANK AMOS;<br>BRYAN TRAYWICK<br><br>　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO.:<br>)  CV-09-HGD-1338-M<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### **MEMORANDUM OF LAW OF PLAINTIFFS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANT NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY**

Comes now Dennis and LuAnn Quarles, Plaintiffs in the above styled action (hereafter Quarles), and file this Memorandum of Law in opposition to the Motion for Summary Judgment of Defendant Nationwide Property & Casualty Insurance Company (hereafter Nationwide).

### Summary Judgment

Under *Rule 56, FRCP*, summary judgment may be entered on the motion, affidavits and other evidentiary material submitted to the Court where it is shown

1

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The purpose of summary judgment is to isolate, and then terminate claims and defenses that are factually unsupported. *Celotex Corp v. Catrett*, 477 US 317, 323-324, 106 S. Ct. 2548, 2552-53 (1986).

A genuine issue exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 248-52, 106 S. Ct. 2505, 2510-12 (1986). The Court must deny summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

**Standard for Summary Judgment**

In ruling on a motion for summary judgment, the Court will never weigh the evidence or find the facts. Instead the Court's role is limited to the threshold issue of whether a genuine issue exists as to a material fact or facts requiring a trial. Evaluating credibility and weighing evidence are functions for the jury. The Court should not weigh the credibility of witnesses. *Anderson*, supra at 249.

In submitting materials with any Motion for Summary Judgment, the moving party may submit deposition transcripts, discovery responses, and other proper exhibits admissible at trial, although for purposes of summary judgment, the

2

form of such submission need not be presented in a form admissible at trial; e.g. affidavits or an examination under oath, rather than sworn deposition testimony. See *Stinnett v. Iron Works Gym/Executive Health SPA, Inc.*, 301 F. 3rd 610, 613 (7th Circuit 2002); *Celotex*, supra at 324.

In the present case, certain Nationwide Claims Log Notes were attached and authenticated by the Affidavit of the Nationwide Adjuster, Bryan Traywick, which may be admissible on the bad faith aspect of this case, but not admissible on the breach of contract claim and proof of the arson defense.

### Objections to Nationwide's Statement of Undisputed Fact

Under paragraph 2 of Nationwide's Statement of Undisputed Fact, Nationwide references in the adjuster's claim log notes observations of the fire by a Captain Patterson, a 19 year veteran of the Attalla Fire Department, Captain Patterson's opinion on the intensity of the fire, and an opinion of the cause of the fire by the State Fire Marshall, who "…opined that it was a set fire." Such statements are hearsay under FRE 802, and do not fall within any hearsay exception. Such statements are disputed. While such entries may be admissible on the bad faith claim to establish what information Nationwide had before it when it denied the Quarles claim, it remains inadmissible on the breach of contract claim and the arson/fraud defenses.

If Nationwide seeks to establish the testimony of Patterson or the fire marshal, it must do so by admissible evidence, not hearsay.

Under paragraph 22 of Nationwide's Statement of Undisputed Fact, Nationwide states "[T]he fire department arrived at the scene with[in] six minutes of Mr. Quarles calling in the fire" referencing p. 40 of Quarles EUO. Again, Quarles statement in his EUO was in response to the Nationwide representative's question as to what the fire department claimed. Such statement is inadmissible under FRE 802. If Nationwide seeks to establish the time frame for fire department arrival, it must do so by admissible evidence, not hearsay. For purposes of its Motion for Summary Judgment, Nationwide should at a minimum have affidavits from fire department personnel as to arrival time, and from Patterson and the fire marshal.

Quarles objects to said statements as substantive evidence of their content on the breach of contract claim and the affirmative arson/fraud defenses.

## Supplemental Undisputed Facts Submitted by Quarles in Opposition to Nationwide Motion for Summary Judgment

Nationwide submitted the report dated January 13, 2009, of Jeff Crain, the cause and origin expert it retained to investigate the cause and the origin fire. Crain's opinions were based upon what he believe were at four separate points of

4

origin in the kitchen. Crain's opinion was that the fire was incendiary in nature and caused by the burning of an ignitable liquid. (Nationwide R26 0959).

Two samples of debris were collected from the kitchen and tested for the presence of an ignitable liquid. (Nationwide R26 0958). These two debris samples were sent for analysis and determination of the presence of an ignitable liquid to Analytical Forensic Associates. The testing proved negative and failed to reveal the presence of any ignitable liquid. (Nationwide R26 401-403).

### Deposition Excerpts of Jeff Crain

In his deposition taken March 18, 2011, Crain described the fryer – the Fry Daddy - used by Quarles to cook french fries as a Presto kitchen kettle electric multi-cooker. (Plaintiffs' Exhibit 4, pp. 29-30). The Fry Daddy had been moved to the garage when he was able to inspect it. (Plaintiffs' Exhibit 4, pp. 49-52). Crain placed the location of the Fry Daddy at the time of the fire to be on the kitchen counter, about halfway between the refrigerator and the wall. (Plaintiffs' Exhibit 4, pp. 51-52). He documented the location on his diagram found at page 6 of his report (Nationwide R26 0698).

Crain confirmed that Quarles and his brother in law had attempted to use a garden hose to put out the fire by spraying water into the house from outside the house through the kitchen window, and that the firemen directed water into the

house through fire house that delivered water at 100 to 150 pounds of pressure. (Plaintiffs' Exhibit 4, pp. 37, 67-68).

Crain confirmed the testing for any ignitable liquid was negative. He did not ask that the samples be specifically tested for vegetable or cooking oil. He merely asked that the samples be tested for an ignitable liquid, and conceded he could not explain the tests, and was uncertain whether the test including testing for the presence of cooking oil residue. (Plaintiffs' Exhibit 4, pp. 69-80).

### Deposition Excerpts of Bryan Traywick

In his deposition taken March 18, 2011, the Nationwide adjuster Bryan Traywick testified he went through the home and it appeared to have normal contents, insofar as furnishings. (Exhibit 5, pp. 19-20). He further stated the home was severely underinsured (Nationwide R26 1238; Exhibit 5, pp. 44-45).

Nationwide denied the claim on March 26, 2009, three and a half months after the fire. The decision to deny the claim was made by a group, including his manager. The claim was based on the Crain cause and origin report that had several points of origin, Quarles financial condition, the fact the house was about to be sold with the payments behind although Quarles caught it up, the bank records, the fact the pets had been boarded, and inconsistencies in Quarles statement regarding his pay from Attalla City Schools, when Quarles indicated he

was paid $7,200 a year, and it was actually $1,800. (Plaintiffs' Exhibit 5, pp. 24-28; Nationwide R26 1203).

### Examination Under Oath Excerpts of Dennis Quarles

In his Examination Under Oath taken on January 21, 2009, Dennis Quarles described a problem in the kitchen with an electrical plug where two small electrical appliances had been plugged into a kitchen outlet and burned up. Quarles called an electrician to check it but the electrician never came out. (Plaintiffs' Exhibit 3, pp. 19-21).

The Quarles home had been listed for sale for three or four weeks. The realtor had done her "staging thing" moving furniture. The reason the home was for sale was one son going off to college, his other son getting married, and the uncertainty of what Quarles and his wife were going to do. (Plaintiffs' Exhibit 3, pp. 24-26). The sales price of $329,000 or $339,000 was set by the realtor. Quarles told the realtor he needed to come out with $310,000. (Plaintiffs' Exhibit 3, pp. 30-31).

When Quarles woke up on the night of the fire, smoke was boiling around his bedroom door. He opened the door and ran out the front door. He and his brother in law sprayed water from a hosepipe into the kitchen window trying to put the fire out. (Plaintiff's Exhibit 3, pp. 37-39).

7

Quarles explained a discrepancy on the time the fire department arrived. A man named Henry Jester was the first person there. Jester told him he timed it and it took the fire department eighteen minutes to arrive. (Plaintiffs' Exhibit 3, pp. 39-40). His wife, daughter, and son were notified of the fire, and they drove eight to ten miles, stopping to buy gas. When they arrived, the firemen were rolling out the fire hoses. (Plaintiffs' Exhibit 3, p. 40).

After Quarles cooked the fries, the fryer was left on the countertop, maybe a foot away from the kitchen sink to the left of the sink. It had been plugged into the plug to the left of the sink on the wall of the kitchen sink window. The cord was short, perhaps twenty inches long. He normally just unplugged it, but does not remember unplugging it on the night of the fire. He could not remember. (Plaintiffs' Exhibit 3, pp. 40-43).

Quarles did not know how the fire started. He felt the fry daddy was left plugged up, or that it was electrical. If he left the fryer on, it was an accident (Exhibit 3, p. 74). Quarles felt the burn patterns could have come from the fry daddy being knocked over by something falling out of the cabinets. The fry daddy was not found where he left it. (Plaintiffs' Exhibit 3, pp. 125-126).

### Affidavit of Henry Jester

Henry Jester was in the Quarles neighborhood when he saw the fire at the Quarles home. He pulled into the driveway and asked Quarles if there was anyone

in the house and was told here was not. He stated it was at least twenty minutes from the time he saw the fire until the first fire truck arrived.

### The Plaintiffs Are Not Barred by Nationwide's Arson Defense.

The only issue before this Court is whether a genuine issue exists. It determining that issue, the Court must consider whether the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of Quarles. *Anderson*, supra. If there is such an issue, summary judgment must be denied, absent the moving party being entitled to a judgment as a matter of law.

This Court does not weigh the evidence or make factual findings; its sole role is the threshold issue of whether a genuine issue exists as to a material fact or facts requiring a trial. Credibility issues and determinations of the weight of the evidence are functions for the jury.

Nationwide contends this was a fire set by Quarles, based upon the conclusions of a cause and origin expert, whose debris samples tested negative for any accelerant. Quarles has denied in his EUO and in his affidavit that he set the fire or procured its setting by another. That denial alone creates a genuine issue of fact sufficient to deny the motion.

Nationwide relies upon circumstantial evidence to implicate Quarles. Quarles has offered evidence to explain this evidence. These are simply jury issues.

9

## Arson

Under Alabama law, arson is an affirmative defense which requires the insurer to show evidence of the following elements:

1. Arson by someone;

2. Motive on the part of the insured; and

3. Unexplained surrounding circumstantial evidence implicating the insured. *S&W Properties, Inc. v. American Motorist Ins. Co.*, 668 So.2d 529, 532 (Ala. 1995).

In order to establish a prima facie case of arson, the insurer must prove the defense of arson by a preponderance of the evidence. Such proof may be made by circumstantial evidence if the inferences are not too remote and all circumstances including the inferences are of sufficient force to bring minds of ordinary intelligence to a persuasion of incendiarism by Quarles by a fair preponderance of the evidence. *Great Southwest Fire Ins. Co. v. Stone*, 402 So.2d 899 (Ala. 1981). *Bush v. Alabama Farm Bureau Cas. Ins. Co., Inc.*, 576 So.2d 175 (Ala. 1991).

Nationwide contends the Plaintiffs were involved in the setting of the fire which destroyed their home, barring their recovery because of arson, and/or concealment or fraud. Primary to this defense is proof of arson which requires that it must be proven by competent evidence that someone set the fire. Nationwide bases proof of the first element upon the report of Jeff Crain, the cause and origin

10

expert retained by Nationwide who felt the fire was intentionally set based upon fire patterns found in the kitchen where the fire originated. It is further based upon inadmissible evidence of opinions attributed to the Attalla Fire Department and the fire marshal. Whether admissible or not, the sole basis is opinion testimony.

Quarles denies setting the fire.

Thus, whether this was a set fire or not is an issue of fact. The Court is required to deny summary judgment where a genuine issue of material fact remains to be tried. Quarles denied setting the fire both in his examination under oath (Plaintiffs' Exhibit 3) and in his affidavit submitted in opposition to Nationwide's Motion for Summary Judgment . (Plaintiffs' Exhibit 1).

Viewing the contrary evidence submitted by Quarles, there are serious issues involving the opinion testimony of Jeff Crain, Nationwide's cause and origin expert. Prior to the fire, Quarles prepared french fries in an electric fryer containing cooking or vegetable oil. It was left on the kitchen counter near the origin of the fire and Quarles was unable to recall whether he turned it off or unplugged it before retiring to his bedroom on the night of the fire. Secondly, the location of the fryer as determined by Crain is contrary with where Quarles places the fryer prior to the fire. Finally, Crain concedes that the injection of water into hot oil could result in splattering of the oil, and it is undisputed that Quarles and his brother-in-law attempted to spray water through the kitchen window in an

11

unsuccessful effort to extinguish the fire, as well as the Attalla when they arrived on the scene.

Quarles' sister and husband lived in the pool house located no more than fifteen (15) to twenty (20) feet from the southwest corner of the home where the kitchen was located and where the fire originated. As stated in his EUO, Quarles said he would never set a fire at the house with sister living that close (check this).

While separated at the time of the fire Quarles and his wife have since reconciled and no divorce action was ever filed.

Nationwide relies upon inadmissible evidence to support a claim that the fire department was there shortly after the fire was reported and that due to the intensity of the fire there had to be some type of accelerant used. In his affidavit, Henry Jester disputes the time involved between reporting and arrival of fire department personne. Jester states there was at least a twenty (20) minute delay from the time Jester arrived on the scene after the fire had been reported and the first arrival of any Attalla Fire Department personnel.

Nationwide further based its denial upon Quarles leaving his pets with a veterinarian before he left for a school board meeting in Birmingham but his affidavit clearly indicates the reason and the basis for not wishing to pick them up until the following Monday.

Nationwide also based its decision of denial on misrepresentations of Quarles' earnings from his position on the Attalla City School Board. Nationwide's documents reflect conflicting reports as to the amount of wages earned. The State and Federal income tax returns for 2007, the year prior to the fire, reflects $1,800.00 in wages. (Nationwide R26 1161; Nationwide R26 1183) However other Nationwide documents, the 2007 W-2 form, reflect Quarles did in fact receive $7,200.00 from Attalla City Schools, consistent with his testimony. (Nationwide R26 1192). Basing its decision of denial on Quarles statements being inconsistent with some documents, while ignoring others, is unusual, to say the least.

While Quarles was experiencing financial problems, that was hardly a condition not experienced by numerous other contractors in the wake of the recession. While Quarles was in the process of selling his house he had it listed for only a month, hardly sufficient time to expect offers given the state of the economy.

Nationwide argues this is sufficient proof of motive to establish the arson defense. While it may establish a prima facie case there are numerous reasons that support an argument to the contrary. Quarles had very little if any equity in the home, based upon the payoff price of the mortgage and what he testified he expected to net from the house, hardly a motive sufficient to destroy the house for

13

insurance proceeds. Quarles stated the home was listed at three twenty-nine ($329,000) or three thirty nine ($339,000), and he told the realtor he wanted three ten ($310,000). (Plaintiffs' Exhibit 3, pp. 31-32). As of February 13, 2009, the total amount necessary to pay the mortgage in full was $322,596.53. (Plaintiffs' Exhibit 1).

According to Bryan Traywick, the Nationwide adjuster, the home was severely underinsured and had a normal content of belongings. In true arson cases, insured premises are overinsured, not underinsured, and furnishings are frequently removed from the home.

Quarles was in the home at the time of the fire which would have placed him in danger of injury or death, not to mention his sister and brother in law in the pool house, no more than twenty feet away from the very corner of the home where the fire originated.

Finally Nationwide argues that Quarles made inconsistent and conflicting statements. This is simply not borne out when one considers both sides of the dispute and the evidence submitted in opposition to this motion by the Plaintiff, as well as Nationwide's own documents.

## Conclusion

There are numerous issues of fact to be resolved by the jury. Nationwide's Motion for Summary Judgment is due to be denied.

14

Respectfully Submitted,

_____
THOMAS E. DAVIS (DAV032)
**Attorney for Plaintiffs**
**Dennis Quarles and Luann Quarles**

**OF COUNSEL:**
740 Forrest Avenue
Post Office Box 8044
Gadsden, AL 35902
Telephone:  (256) 543-2301
Facsimile:   (256) 543-2372
E-mail:       teugened@bellsouth.net

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following counsel of record by placing a copy thereof in the United States mail, properly addressed and postage prepaid, on this the 4th day of May, 2011.

Kori L. Clement
HARE, CLEMENT & DUCK, P.C.
505 North 20th Street
Suite 1010, Financial Center
Birmingham, Alabama 35203

_____
OF COUNSEL