UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

DENNIS QUARLES, et al.,                )
                                       )
         Plaintiffs                    )
                                       )
    vs.                                )   Case No. 4:09-cv-01338-HGD
                                       )
NATIONWIDE PROPERTY &                  )
CASUALTY INSURANCE CO.,                )
                                       )
         Defendant                     )

## REPORT AND RECOMMENDATION

The above-entitled civil action is before the court on the motion for summary judgment filed by defendant Nationwide Property & Casualty Insurance Company on February 28, 2011. (Doc. 20). Plaintiffs Dennis Quarles and Luann Quarles filed suit against Nationwide Property & Casualty Insurance Company, Frank Amos and Bryan Traywick in the Circuit Court of Etowah County on June 5, 2009. Plaintiffs asserted claims for breach of contract, fraud/suppression, bad faith and negligence. The action was removed to this court on July 2, 2009. (Doc. 1, Notice of Removal). Defendants Amos and Traywick subsequently were dismissed as improperly joined. (Doc. 12).

On February 28, 2011, the remaining defendant, Nationwide Property & Casualty Insurance Company, filed a motion for summary judgment. (Doc. 20). Prior to this, the court had entered an Initial Order Governing All Further Proceedings on October 27, 2009. (Doc. 8). With respect to submissions on motions for summary judgment, Appendix II of the Order provides:

> The responsive submission of the party opposing the motion for summary judgment shall be filed not later than 21 days after the motion for summary judgment is filed. The Movant's reply submission shall be filed no later than 11 days after the date on which the opponent's responsive submission was due.

Plaintiffs failed to file a responsive pleading within 21days after defendant filed its Motion for Summary Judgment. Not until the court entered an order on May 3, 2011, advising the parties that the motion for summary judgment had been taken under submission, did plaintiffs file opposition to the motion for summary judgment, accompanied by a motion seeking permission to do so. (Doc. 26). Defendant immediately filed a Motion to Strike plaintiffs' response as untimely. (Doc. 27). Defendant's motion to strike was granted, and plaintiffs' evidence and memorandum of law in opposition to the motion for summary judgment were stricken. (Doc. 28). This Order was not appealed to a United States District Court Judge within the time allotted under 28 U.S.C. § 636(b)(1)(C). Therefore, defendant's motion for summary judgment is unopposed.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

A moving party may meet that burden "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting material–including the facts considered undisputed–show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed.R.Civ.P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact. *Id.* at 587, 106 S.Ct. at 1356. "The evidence and all reasonable inferences, must be viewed in

the light most favorable to the non-movant. . . ." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## DISCUSSION

Plaintiffs' residence was insured under a policy issued by defendant, Nationwide Property & Casualty Insurance Company (Nationwide). On or about December 7, 2008, a fire occurred at this residence, which was located at 301 Hannah Avenue, Attalla, Alabama.

Subsequent to the fire, Jeff Crain, a certified fire investigator, was requested by Nationwide to conduct an origin and cause examination of this residence. Crain examined the entire house and all of the burn patterns within it. He eliminated all possible electrical or accidental causes, including lightning. (Doc. 22-8, Crain Aff.). His investigation revealed the following:

> I found three separate areas of intense burning on the base of the cabinets in the kitchen around the toe-kick area and one on the floor between the island cabinet and refrigerator. The presence of these locally intense areas of burning is consistent with a liquid fuel burning on the floor into the toe-kick area. There was also locally intense burning on the tile floor between the island cabinet, refrigerator and the breakfast dining area where the tile is cracked and broken and has

> separated from the mortar underneath. This area of local intense damage is also consistent with burning of an ignitable liquid on the floor.
>
> Mr. Quarles indicated that he had cooked French fries in a deep fryer in the evening before the fire. I located the deep fryer in the debris of the fire and found it in an area several feet from where the electrical cord for the fire was located. Based on the burn patterns and the condition and location of the wiring, I eliminated the fryer as a possible cause of the fire.
>
> In my opinion and as set out in my report, the fire spread from the kitchen and the burning indicates there were at least four separate areas of origin. One area of origin was on the floor between the refrigerator and the sink, another in the area of the dishwasher, one between the oven and the island cabinet and one area of origin on the floor between the island cabinet and refrigerator and the breakfast/dining area. It is further my opinion that the fire was incendiary in nature and was caused by the burning of an ignitable liquid.

(*Id.*).

After the fire, plaintiffs presented a Proof of Loss to Nationwide making claims for $602,860. Based on the report of Jeff Crain, the fire was intentionally set, incendiary in nature, with multiple points of origin. (*Id.*; Doc. 22-8 at Origin and Cause Report). At the time of the fire, the Quarleses were two months behind on their mortgage. (Doc. 22-1, Ex. 1, Bryan Traywick Aff. at Ex. A, Claims Log Notes (12/4/2008), Nat. R. 26-1238). The residence was listed for sale, but no one had looked at the property and no offers had been made. (*Id.*) The Quarleses were frequently behind on their mortgage payments. For instance, the residence was set to go into foreclosure in July 2008, and the Quarleses had to come up with over

$9,000 to keep this from happening. During this same time period, the Quarleses sold an adjoining lot to a relative for approximately $15,000 to "pay bills and live on." (*Id.*, Claims Log Notes, (3/24/2009) Nat. R. 26-1203; Ex. 7, Examination Under Oath (EUO) of Dennis Quarles, at 98-99). In addition to being behind on the mortgage, plaintiffs were behind on a $91,000 loan with Metro Bank. (Doc. 22-1, Ex. 1, Bryan Traywick Aff. at Ex. A, Claims Log Notes (2/11/2008) Nat. R 26-1236-37). They were also behind on their homeowners insurance premiums. (Ex. 7, EUO of Dennis Quarles, at 101).

Plaintiff Dennis Quarles' only sources of income were from his construction work and $1,800 per year from the Attalla School Board. (*Id.* at 12; Doc. 22-1, Ex. 1, Bryan Traywick Aff. at Ex. A, Claims Log Notes (3/24/2009) Nat. R. 26-1203).

Plaintiffs' monthly expenses totaled at least $7,335, including $3,200 per month for their mortgage. (Ex. 7, EUO of Dennis Quarles, at 103). Their 2006 tax return reflects total income of $12,620. Their 2007 return reflects total income of $14,524. Thus, their income for these two years was insufficient to make only the mortgage payment. According to Dennis Quarles, the slow economy had cut into his income due to a reduction in demand for home building. (*Id.* at 108). Bank records reflect that their checking account was frequently overdrawn.

At the time of the fire, the Quarleses were boarding their inside pets at the Rainbow Pet Center. (Doc. 22-1, Ex. 1, Bryan Traywick Aff. at Ex. A, Claims Log Notes, (01/06/2009) Nat. R. 26-1222). This is the first time they had boarded their pets in over a year. (*Id.*). At the time of the fire, Mr. Quarles was at home in the bedroom. (Ex. 7, EUO of Dennis Quarles, at 37). The fire department arrived within six minutes of Mr. Quarles calling in the fire. (*Id.* at 40). At the time of the fire, no flammable substances were stored in the area where the fire started. (*Id.* at 68).

The policy of insurance covering plaintiffs' residence contained the following pertinent provisions:

> Property Exclusions (Section I)
>
> 1. **We** do not cover loss to any property resulting directly or indirectly from any of the following.
>
>    Such loss is excluded even if another cause or event contributed concurrently on in any sequence to cause the loss.
>
>    \* \* \*
>
>    g. Intentional acts, meaning loss resulting from an act committed or at the direction of an **insured** that may reasonably be expected to result from such acts, or is the intended result from such acts. Intentional acts include criminal acts. Such acts exclude coverage for all **insureds**.

(Homeowners' Policy at D1).

    **2.**    **CONCEALMENT OR FRAUD**

        a.)    This policy is void as to all **insureds** if **you** or any other **insured** has intentionally misrepresented any material fact or circumstances which would have caused **us** not to issue or renew this policy.

        b.)    This policy does not provide coverage for all **insureds** if **you** or any other **insured**, either before or after the loss has:

            (1)    intentionally concealed or misrepresented any material fact or circumstances; or

            (2)    committed any fraud or made false statements relating to such loss.

(*Id.*, General Policy Conditions at L1).

    Alabama law provides:

    No misrepresentation in any proof of loss under any insurance policy shall defeat or void the policy unless such misrepresentation is made with actual intent to deceive as to a matter material to the insured's rights under the policy.

*Ala. Code* § 27-14-28 (1975). In addition, Alabama recognizes that an insured who commits arson is not entitled to recover insurance benefits. "Arson by an insured is an absolute defense to an action upon the policy, even in the absence of language in the policy so providing." *Mueller v. Hartford Ins. Co. of Alabama*, 475 So.2d 554, 557 (Ala. 1985). In order to establish arson as a defense, defendant must prove that

"(1) the fire was intentionally set; (2) [the Quarleses] had a motive for committing the alleged arson; and (3) [the Quarleses] either set the fire or had it set, which may be proved by unexplained surrounding circumstantial evidence implicating [the Quarleses]." *Shadwrick v. State Farm Fire & Casualty Co.*, 578 So.2d 1075, 1077 (Ala. 1991); *see Mueller v. Hartford Ins. Co.*, 475 So.2d 554 (Ala. 1985); *Great Southwest Fire Ins. Co. v. Stone*, 402 So.2d 899 (Ala. 1981).

As to the first element, the record contains no evidence supporting any theory of the cause of the fire but arson. The fire was incendiary in nature and had four different points of origin. As to the second element, Nationwide submitted ample evidence of the Quarleses' poor financial situation and threatened foreclosure and auction of their home sufficient to show that they had a motive to set the fire. *See Shadwrick*, 578 So.2d at 1078; *Fondren v. Allstate Ins. Co.*, 790 F.2d 1533, 1535 (11th Cir. 1986).

In order to establish the third element, the defendant must show that the plaintiffs set the fire or had it set. This may be done by establishing that there is unexplained surrounding circumstantial evidence implicating the Quarleses. The insurer's burden of proof is not particularly heavy. Proof may be made by circumstantial evidence "if the inferences are not too remote and all circumstances, including the inferences, are of sufficient force to bring minds of ordinary intelligence

to a persuasion of incendiarism by a fair preponderance of the evidence." *Mueller*, 475 So.2d at 557(quoting *Great Southwest Fire Ins. Co. v. Stone*, 402 So.2d 899, 900 (Ala. 1981)).  Proof beyond a reasonable doubt, or proof by direct evidence, is not required.  *Fondren*, 790 F.2d at 1535.

With regard to the third element, the evidence overlaps somewhat with the second element.  Unexplained surrounding circumstantial evidence implicating the Quarleses includes the evidence that the Quarleses were in desperate financial straits.  They had been attempting to stave off foreclosure for an extended period of time.  Bank records reflect that they frequently wrote checks without sufficient funds in the account to cover them.  The mortgage payment alone was $3,200.  The Quarleses' total income for the preceding two years was not enough to cover even one year of payments on the mortgage, much less any other expenses.  The residence was up for sale, but there had been no interest shown by any potential buyers.

In addition, the Quarleses were behind on their homeowners' insurance payments and, thus, in danger of losing insurance coverage on their residence as well.  In addition, they were indebted in the amount of $91,000 to Metro Bank for a loan, and they were also behind on payments due on this loan.

In addition to the Quarleses' poor financial situation, the evidence is undisputed that Mr. Quarles was at home at the time of the fire.  There is no evidence

that anyone else entered the home during this time. Although he was at home at the time the fire started, Mr. Quarles stated that he has no idea how it started. (Doc. 22-5, Proof of Loss claim form). Consequently, there is ample, uncontradicted evidence of unexplained surrounding circumstantial evidence implicating that this fire was started by Dennis Quarles. Therefore, Nationwide properly relied on the homeowner's policy exclusions to deny plaintiffs' insurance claim and, therefore, is not liable to plaintiffs for breach of contract, fraud/suppression, bad faith or negligence.

Based on the foregoing, it is RECOMMENDED that defendant's motion for summary judgment be GRANTED and this action DISMISSED WITH PREJUDICE.

## NOTICE OF RIGHT TO OBJECT

The parties are DIRECTED to file any objections to this Report and Recommendation within a period of fourteen (14) days from the date of entry. Any objections filed must specifically identify the findings in the magistrate judge's recommendation objected to. Frivolous, conclusive, or general objections will not be considered by the district court.

Failure to file written objections to the proposed findings and recommendations of the magistrate judge's report shall bar the party from a *de novo* determination by

the district court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

    DONE this 8th day of March, 2012.

                                            HARWELL G. DAVIS, III
                                  UNITED STATES MAGISTRATE JUDGE